ALFORD, Judge.
Patsy Ballard Head (now Perrone) appeals the trial court judgment which terminated the existing joint custody agreement relative to her minor children and awarded sole custody to her ex-husband, James Walter Head.
A judgment of divorce was granted on June 8, 1984. Subsequently, the parties worked out a plan for joint custody of the couple’s minor children. The trial court signed the judgment implementing the joint custody plan on August 21, 1984. Under the plan, the two girls were to reside primarily with their mother, and the boy was to reside primarily with his father. The plan also provided for liberal visitation privileges for the non-custodial parent, for $100 per month child support to be paid by Mr. Head and for unrestricted telephone communication between the parents and children.
Both parties have since remarried. On June 28, 1985, Mr. Head filed a rule for contempt, enforcement of visitation rights and change of visitation privileges against Mrs. Perrone. On July 24, 1985, Mrs. Per-rone filed an answer to the rule and her own rule for past due child support and an increase in child support. According to the court minutes, a conference was held in the trial judge’s office on July 30, 1985. At that time, a stipulation was entered modifying the visitation slightly. All other issues were passed without date, and the court ordered that both parents, the step-parents and the two girls be evaluated by Dr. Fred Tuton and a report furnished to the court. The costs of the evaluations were to be split equally between the parties. On December 13, 1985, the trial court set hearing on both rules for December 17, 1985, and ordered that Mrs. Perrone and her husband, Marco Perrone, be personally served with orders to appear.
The hearing was held as scheduled. Mrs. Perrone did not appear; however, her husband did appear and testify. The only other person to testify was Mr. Head. Following the hearing, the trial judge revoked the plan of joint custody, awarded sole care, custody and control of the minor children to Mr. Head, held Mrs. Perrone in contempt of court for her failure to appear, issued a bench warrant for Mrs. Perrone’s arrest, ordered Mr. Head to pay $300 in past due child support, terminated future child support payments and ordered the Perrones to show cause why they should not be held in contempt of court for their willful failure to have themselves and the two minor females evaluated by Dr. Tuton.
Mrs. Perrone appeals that portion of the judgment relative to her failure to ap *806 pear and to the change of the child custody arrangement. She alleges that the trial court erred in continuing with the hearing when she had not been properly served in accordance with Louisiana law. At the outset, we note that Mrs. Perrone’s attorney, who was present at the hearing, did not object at that time to domiciliary service of the subpoena. This objection was raised for the first time on appeal. Therefore, this issue is not properly before us. See Rule 1-3, Uniform Rules — Courts of Appeal. This assignment of error has no merit.
The only issue properly before us is whether the trial court erred in changing the custody of the minor children. Mrs. Perrone contends that the court cannot change a custody decree when there has been no request for a change of custody either in the pleadings or during the hearing. Moreover, she claims that the evidence offered at the hearing was insufficient to support a change of custody. It is well settled jurisprudentially that “upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight, and his discretion will not be disturbed on review in the absence of a clear showing of abuse.” Bergeron v. Bergeron, 492 So.2d 1193, 1196 (La.1986).
Mr. Head requested enforcement of visitation privileges and an amendment to the existing joint custody agreement which would increase his visitation with his daughters to every weekend and to eight weeks during the summer instead of the first and third weekend of every month and six weeks in the summer. At no time, either in the pleadings or during his testimony, did Mr. Head seek to obtain physical custody of his daughters under the joint custody arrangement or to be named sole custodian. However, La.Civ.Code art. 146(E) states that any order or plan for joint custody “may be modified or terminated upon the petition of one or both parents or on the court’s own motion, if it is shown that the best interest of the child requires modification or termination of the order.” (emphasis added). This codal provision applies to permanent child custody decrees under La.Civ.Code art. 157(A). We have been unable to locate any jurisprudence on a trial court’s termination of a joint custody agreement when neither party sought such action. Even if the court could terminate a plan on its own motion, we find that the trial court clearly abused its discretion in doing so in the instant case in light of the recent supreme court decision in Bergeron, 492 So.2d at 1194, 1203, as well as their prior decision in Everett v. Everett, 433 So.2d 705 (La.1983).
In the case before us, the trial judge terminated the joint custody arrangement stating that it was no longer in the best interest of the children. The court indicated a belief that the Perrones had no intention of letting Mr. Head see his daughters again if they could help it. He cited Mrs. Perrone’s failure to grant visitation, although she stipulated she would; the Perrones’ failure to be evaluated or to have the two girls evaluated by Dr. Tuton, even though Mr. Head had prepaid the doctor’s fee for one of the girls; and Mrs. Perrone’s leaving the state with the children. At the hearing, Mr. Perrone testified that no evaluations were made because they did not have the money to pay their share. He explained that he was unemployed at the time, that Mrs. Perrone was embarrassed by their financial difficulties, that they were attempting to sell their house, that Mrs. Perrone had taken the children to stay with his mother in Texas and that he planned to join them in Texas to seek employment there. He admitted that they had exercised poor judgment in not having at least one of the girls evaluated. He denied that either he or Mrs. Perrone had ever interfered with Mr. Head’s visitation and stated that the girls had refused to go with Mr. Head when he came to pick them up.
On the other hand, Mr. Head testified •that the Perrones refused to let him talk to his daughters and that one or the other came out and told him that the girls did not want to see or talk to him when he went to pick them up. He said that on one occasion one of his daughters, coached by her moth *807 er, came to the door and said she didn’t want to go. He stated that he knew the girls had moved with their mother to Texas, but he did not ask for anything other than an increase in visitation privileges. He advised the court that he and his wife had been evaluated in accordance with the court’s directive and that he had paid the doctor for one of his girls to be evaluated.
It is apparent from the record that the court was justifiably upset at Mrs. Perrone’s failure to appear at trial, at the Perrones’ failure to cooperate with the custody order relative to visitation and at the Perrones’ failure to follow through with the court-ordered evaluations. However, custody should not be changed when to do so would punish a parent for past behavior when there is no proof of a detrimental effect on the child or children. Everett, 433 So.2d at 708. In Everett, the supreme court ruled that interference with the other parent’s visitation with his child was not a sufficient reason to change custody when there was no showing of detriment to the child. 433 So.2d at 708. Moreover, removing children from the court’s jurisdiction, even in violation of a temporary restraining order, so as to obtain employment does not overcome the presumption of La.Civ.Code art. 146(C) that joint custody would be in the best interest of the children. See Knight v. Knight, 470 So.2d 644 (La.App. 1st Cir.1985). In the instant case, no evidence was introduced of any detrimental effect on the children.
In Bergeron, the supreme court stated that “[although the trial court retains a continuing power to modify a child custody order, there must be a showing of a change in circumstances materially affecting the welfare of the child before the court may consider making a significant change in the custody order.” 492 So.2d at 1194.
The only changes in circumstances apparent from the record are that the children have moved to Texas with their mother, that the stepfather is currently unemployed and seeking work, that the girls and their father have not visited with each other as provided for in the custody plan and that the Perrones and the children have not been evaluated as ordered by the court. The record does not contain any information as to how these changes may have adversely affected the children’s welfare. Therefore, we are unable to infer that these changes materially affected the children’s welfare without further evidence.
For the foregoing reasons, the judgment of the trial court relative to child custody is reversed and the original joint custody arrangement and child support payments are reinstated. All other provisions of the trial court judgment are affirmed. Costs of this appeal are to be borne equally by plaintiff and defendant.
AFFIRMED IN PART, REVERSED IN PART, RENDERED.